Elaine K. Bittner, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

*Terrence E. Tomassetti,* for appellant.

*Mary F. Grabowski,* with her *Linda M. Gunn,* Assistant Attorneys General, for respondent.

OPINION BY JUDGE MACPHAIL, April 9, 1980:

Elaine K. Bittner (Claimant) appeals to this Court from an order of the Department of Public Welfare (DPW) affirming the decision of the Blair County Board of Assistance (Board) which denied her a non-recurring one-time grant to use in purchasing an automobile. Claimant raises three issues for our consideration: whether she is eligible for the one-time grant pursuant to the provisions of 55 Pa. Code §175.23(c)(2)(iv), whether that regulation is inconsistent with and therefore violates the federal statute which established the Aid to Families with Dependent Children (AFDC) program, 42 U.S.C. §601 *et seq.,* and whether the denial of the grant violates her equal protection rights. For the reasons which follow, we reverse the order of DPW and remand these proceedings for payment of the one-time grant to Claimant.

The facts of this case are not in dispute. Claimant and her nine year old son reside in Altoona. At the time of her application for the one-time grant, she was

employed part-time at a McDonald's restaurant located approximately four blocks from her residence. She walked to work. In addition to her salary from McDonald's, she received partial benefits through the AFDC program. Prior to July, 1978, Claimant left her son with a neighbor while she worked. When the neighbor was no longer able to care for the child, she was forced to take him to a day care center approximately eight blocks from her home. Claimant was required to begin her work day at 6:30 A.M., the same time the day care center opened. She was able to arrange to leave her son at the center 5 minutes early, at 6:25 A.M., and to arrive for work 5 minutes late, at 6:35 A.M. She could accommodate this schedule, however, only with the use of an automobile.

Claimant was informed by her DPW caseworker, Ms. Gauntner, that she would be eligible for a one-time grant to purchase an automobile. Claimant did purchase an auto for $327. In order to pay for it, she used $227 of her own resources and borrowed the remaining $100 from her sister. She then applied to DPW for a $100 one-time grant.[1] Subsequent to her purchase of the car, Claimant's case was reassigned from Ms. Gauntner to a different caseworker, Mr. Findley. Mr. Findley determined that Claimant was ineligible for the one-time grant because such grants are available only to those who need them in order to *apply for* or *accept* employment or training not to those who need them in order to *retain* their employment. Following a fair hearing, DPW affirmed the Board's determination. The case is now properly before us on appeal.

The DPW regulation at issue here, 55 Pa. Code §175.23(c)(2)(iv), states:

---

[1] The maximum grant available pursuant to Section 175.23(c)(2)(iv) for purchase of a car is $200.

A nonrecurring one-time grant may be authorized for an allowance to meet the actual minimum cost, subject to the specified maximum allowances, for any of the following items provided an individual shows that *these items are needed in order to apply for or to accept employment or training* which will result in decreasing or preventing his need for assistance. ... The eligible items are as follows:

. . . .

(iv)  Only the actual cost of repairs on the automobile of the client, not applying to WIN, the actual cost of an automobile, a down payment on automobile, subject to a maximum of $200 plus the cost of state inspection fee, automobile license plates, and driver's license if there is no other means of transportation to a job or training or the job requires the use of an automobile. (Emphasis added.)

DPW argues that the regulation clearly limits nonrecurring one-time grants for automobiles to those persons *seeking to apply for or accept employment.* Since Claimant here needs such a grant in order to *retain* her employment, DPW's argument continues, she simply is not eligible for the grant.

It is true, as we said in *Budzinski v. Department of Public Welfare,* 39 Pa. Commonwealth Ct. 176, 179, 394 A.2d 1333, 1334-35 (1978), that:

The establishment by an administrative agency of rules, regulations and standards, the administration by an agency of programs in its charge and the execution of administrative duties and functions all involve wide discretion. In none of these areas may the courts disturb the exercise of this discretion in the absence of proof of fraud, bad faith, manifest and flagrant

abuse of discretion or a purely arbitrary execution of duty.

We find the application of Section 175.23(c)(2)(iv) to constitute arbitrary action and an abuse of discretion.

The same regulation was recently before this Court for consideration in the case of *Rodgers v. Department of Public Welfare,* 45 Pa. Commonwealth Ct. 574, 405 A.2d 1068 (1979). There, Claimant applied for a one-time nonrecurring grant of $66 to cover clothing and a registration fee required for attendance at a beauty academy. DPW denied her request reasoning that since the application was made 8 days after she began her training to become a beautician, the grant was not needed "in order to apply for or accept employment or training." We held there that DPW's interpretation of the regulation was "far too narrow and restrictive" and we ordered that her application be granted. DPW argues that *Rodgers* is distinguishable from the case before us because in *Rodgers* it was clear that but for the lateness of Ms. Rodger's application she would have been entitled to the grant whereas here even if Claimant's application had been "timely made, it would not have been granted." DPW's argument that Claimant was "otherwise ineligible" because there was an alternative means of transportation—*i.e.* walking—available to Claimant begs the question. It is precisely because walking was an inadequate alternative that Claimant had to apply for the grant. Furthermore, we do not find it determinative that Claimant worked for more than a year before applying for the nonrecurring grant as opposed to Ms. Rodgers' training for 8 days before applying. Just as Ms. Rodgers needed the grant to *maintain* herself in the training program, Claimant here needed the grant to *maintain or retain* her employment. We note that Claimant lived and worked without an automobile for as long as possible but when it did become a necessity

she purchased it and applied for the grant immediately. Our decision in *Rodgers* controls the facts of this case as well and we find that Claimant should be awarded the nonrecurring $100 grant.

DPW also argues that Claimant's request for a grant should be denied because she does not need the automobile to transport herself to work but rather to take her son to the day care center. DPW again begs the question. If Claimant cannot get her son to the day care center and then get herself to work on time she will not retain her employment. Whatever the secondary purpose of Claimant's purchasing a car, the primary purpose is to enable her to work.

Finally, DPW argues that if we grant Claimant's request we will open the floodgates for nonrecurring grant applicants. In a judicial system where we adjudicate the rights and responsibilities of individuals, we cannot accept the argument that we should deny rights to one because we may have to grant them to many. DPW's arguments are without merit and Claimant is entitled to the nonrecurring grant.

Our interpretation of Section 175.23(c)(2)(iv) is further supported by federal law. Claimant argues that that provision, as applied by DPW, violates the purpose of the AFDC program set forth at 42 U.S.C. §601. We agree. Section 601 provides that

> For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives *to attain or retain* capability for the maximum self-support and personal independence consis-

tent with the maintenance of continuing parental care and protection, there is authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part. (Emphasis added.)

See *Shea v. Vialpando*, 416 U.S. 251, 253 (1974). The AFDC program is one of "cooperative federalism" through which each state has great latitude in dispensing the federal funds it receives. *Dandridge v. Williams*, 397 U.S. 471, 478 (1970). In all instances, however, the program must be operated in conformity with the Social Security Act of 1935, including 42 U.S.C. §601, and with regulations established by the Department of Health, Education and Welfare. *Bowen v. Department of Public Welfare*, 21 Pa. Commonwealth Ct. 144, 147, 343 A.2d 690, 691 (1975).

Section 175.23(c)(2)(iv) complies with the purposes set forth in Section 601 as far as it goes, but it does not go far enough. To deny the grant Claimant seeks here is to deny one of the Congressional objectives of the AFDC program, that is to help parents "*retain* [the] capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection."[2] (Emphasis added.) For this reason, too, we must reverse the order of DPW.

Furthermore, there is something inherently unfair in the way Claimant was treated by her caseworkers. The referee found as a fact that Claimant was told by caseworker Gauntner that she was eligible for the non-recurring grant to purchase an automobile. In reliance upon this information, Claimant used $227 of her own funds and borrowed $100 from her sister to buy the car. Then, the referee found, another caseworker

---

[2] Claimant eventually became self-supporting and was removed from the assistance rolls.

was assigned to Claimant's case and he denied her request based on Section 175.23(c)(2)(iv). This case again brings to mind President Judge CRUMLISH's concurring opinion in *Travis v. Department of Public Welfare*, 2 Pa. Commonwealth Ct. 110, 118-19, 277 A.2d 171, *aff'd*, 445 Pa. 622, 284 A.2d 727 (1971); *see also Felker v. Department of Public Welfare*, 50 Pa. Commonwealth Ct. 90, 411 A.2d 1297 (1980).

The order of the Department of Public Welfare is reversed and this case is remanded for the payment of benefits to Claimant.[3]

### ORDER

AND Now, this 9th day of April, 1980, the order of the Commonwealth of Pennsylvania, Department of Public Welfare entered April 5, 1979 is reversed and the above captioned case is remanded for the payment of benefits to Claimant Elaine K. Bittner.

Judge WILKINSON, JR. dissents.

---

[3] Because we have concluded that Claimant is eligible for the nonrecurring grant authorized by Section 175.23(c)(2)(iv), we need not address the issue of whether denial of the grant violated Claimant's equal protection rights.