523 A.2d 1104

Anna M. PELTON, et al., Petitioners/Appellees,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent/Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 1, 1986.

Decided March 30, 1987.

324

John A. Kane, Harrisburg, Jason W. Manne, Pittsburgh, for respondent/appellant.

Frederick M. Stanczak, Williamsport, for petitioners/appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The issue in this case is whether welfare recipients who are gainfully employed or engaged in training programs are eligible to receive a one-time grant to repair and/or purchase an automobile as authorized by a regulation promulgated by the Department of Public Welfare (hereinafter DPW) at 55 Pa.Code § 175.23(c)(2)(iv). The regulation provides:

(2) *Nonrecurring one-time grant.* A Nonrecurring one-time grant may be authorized for an allowance to meet

the actual minimum cost, subject to the specified maximum allowances, for any of the following items provided an individual shows that these items are needed *in order to apply for or to accept employment or training* which will result in decreasing or preventing his need for assistance. The individual must provide proof that he has an offer of a job, referral to a job or training program, or that he has been scheduled for admission to an examination, such as a Civil Service test or high school equivalency test. The eligible items are as follows:

\* \* \* \* \* \*

(iv) only the actual cost of repairs on the automobile of the client, not applying to WIN, the actual cost of an automobile, a down payment on an automobile, subject to a maximum of $200 plus the cost of state inspection fee, automobile license plates, and driver's license if there is no other means of transportation to a job or training or the job requires the use of an automobile.

55 Pa.Code § 175.23(c)(2)(iv) (Emphasis added). A plain reading of this regulation is that eligibility is limited to persons who are in the process of applying for or accepting employment or training. The question raised in this appeal is whether the exclusion from eligibility of those persons who are already employed or in training is legally permissible.

This case arose when Anna M. Pelton and Nancy Boudman, both of whom received partial benefits from the DPW through the Aid to Families with Dependent Children program (AFDC), 42 U.S.C. § 601, applied for the one-time grant. Both were employed at the time of their application and both applied for the grant to fix cars which had broken down. The Clinton County Board of Assistance determined that Pelton and Boudman were ineligible for the one-time grant because they were already employed at the time of the application. After fair hearings were conducted, DPW affirmed the Board's decision in these cases.

Pelton and Boudman then took an appeal to Commonwealth Court seeking both declaratory judgment and injunc-

tive relief. DPW petitioned for removal of the case to the United States District Court for the Middle District of Pennsylvania for consideration of the federal aspects of the case, and the petition was granted. By stipulation of the parties, the federal court then granted Pelton and Boudman's motion for class certification. On November 1, 1983 the District Court entered a Memorandum Opinion and Order in which it ruled that DPW's regulation and its interpretation of the regulation does not violate federal law.

■ On November 15, 1984, the District Court entered an order in which it purported to remand[1] issues concerning state law to Commonwealth Court, and almost a year later, on November 13, 1985 the District Court entered judgment in favor of DPW on remaining federal issues. Commonwealth Court treated the individual complaints as addressed to its appellate jurisdiction and the class action as addressed to its original jurisdiction, and on October 8, 1985 that court entered an order granting Pelton and Boudman's motion for summary judgment and denying DPW's cross-motion for summary judgment.

On April 14, 1986 this Court granted allocatur as to the individual petitions and consolidated that appeal with the class action aspects of the case. We also deferred action on a motion filed by Pelton et al. to quash the appeal of the class action.

Pelton and Boudman appealed the federal case to the United States Court of Appeals for the Third Circuit. Oral argument before the Third Circuit was conducted on June 18, 1986, and the Circuit Court subsequently indicated that the case would be held under advisement until this Court renders its decision on the state issues.

1. Although we endorse the cooperation of state and federal courts in resolving legal disputes which concern both jurisdictions, we note that a federal district court has no power to order any court of this Commonwealth to hear a case. For that reason, the federal court's use of the term "remand" was inappropriate. Moreover, since the state aspect of this case had never left Commonwealth Court, the federal court had nothing to "remand."

## COMMONWEALTH COURT'S DECISION

Commonwealth Court's rationale for its determination that welfare recipients who are already employed as well as those who are applying for work or training are eligible for the one-time grant is based mainly on that court's view that denying eligibility to welfare recipients who are already working frustrates the purpose of the regulation itself and of the Public Welfare Code of decreasing recipients' need for assistance:

> [The] Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 401 states that the purpose of the Code is to promote the welfare of the needy and distressed in the Commonwealth and that the Code's provisions are to be administered in such a manner *"as to encourage self-respect, self-dependency* and the desire to be a good citizen and useful to society." As we noted in *Chase*, [depriving] an applicant of the means of maintaining employment or continuing training ... is inconsistent with grants that enable a welfare recipient to apply for or accept employment or training ... [and] is *inconsistent with Section 401 of the Code.*

92 Pa.Comwlth.Ct. 181, 187, 498 A.2d 1380, 1383 (1985) (Emphasis added). The court also notes that it had held in earlier cases that the one-time grants of Section 175.-23(c)(2)(iv) could not be limited only to those persons who were applying for or accepting training or employment and that this case is indistinguishable in principle from those earlier decisions in *Rodgers v. DPW*, 45 Pa.Comwlth. Ct. 574, 405 A.2d 1068 (1979), *Chase v. DPW*, 46 Pa.Comwlth. Ct. 308, 406 A.2d 261 (1979), *Woody v. DPW*, 66 Pa. Comwlth. Ct. 629, 445 A.2d 864 (1982), and *Bittner v. DPW*, 50 Pa.Comwlth. Ct. 396, 413 A.2d 20 (1980).

Finally, the court observed that merely because the federal issues in the case were resolved in favor of DPW does not mean that the state issues must be so resolved.

## LEGAL ISSUES

DPW claims that Commonwealth Court erred in interpreting its regulation against the plain meaning of the regula-

tory language and that Commonwealth Court acted beyond its authority in utilizing Section 401 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, No. 21, art. 4, § 401, to conclude that DPW's regulation violates the legislative intent of the Code. Next, DPW asserts that it was error for Commonwealth Court to grant summary judgment when there were disputed material facts in the case. Finally, at issue is whether the Commonwealth may take a direct appeal of the class action aspects of their case or whether that direct appeal should be quashed on the grounds that it should have been an appeal by allowance. If the class action case is regarded as having been filed in Commonwealth Court's original jurisdiction, there is a direct appeal to this court as of right; however, if the class action case was addressed to Commonwealth Court's appellate jurisdiction, there is appeal to this Court only by allowance.

First, we address the direct appeal issue. Since the substantive issues raised in the class action appeal are identical to those raised in the individual appeals, the same issues will be adjudicated in both cases. Furthermore, in a declaratory judgment action, the same remedies would be provided in both cases. The class action appeal is, therefore, superfluous, and we grant the motion to quash on the grounds that the appealability of the class action is moot.

As to the substantive issues in the case, we are governed by the standard of review to be applied by courts reviewing the validity of an agency's interpretation of its own regulations in *Commonwealth v. Forbes Health System*, 492 Pa. 77, 422 A.2d 480 (1980):

In reviewing an administrative agency's interpretation of its own regulations, courts are governed by a two step analysis. First, "[i]n construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89

L.Ed. 1700 (1945). Second, the regulations "must be consistent with the statute under which they are promulgated." *Id.* at 873, 97 S.Ct. at 2156. See also *Commonwealth v. Beck Electric Construction, Inc.,* 485 Pa. 604, 403 A.2d 553 (1979).

*Id.,* 492 Pa. at 81, 422 A.2d at 482. In short, the reviewing court's inquiry is (1) whether the agency's interpretation is consistent with the regulation and (2) whether the regulation is consistent with the statute under which it is promulgated.

Commonwealth Court relies on language of Section 401 of the Code, 62 P.S. § 401, which states "that assistance shall be administered in such a way and manner as to encourage self-respect, self-dependency and the desire to be a good citizen and useful to society," and language from the regulation itself concerning the goal of "decreasing or preventing [the applicant's] need for assistance," but it ignores Section 403, which provides:

> The department shall establish rules, regulations, and standards, consistent with law, *as to eligibility for assistance* and as to its nature and extent.... The *Secretary or his designee in writing is the only person authorized to ... interpret or make specific the law administered by the Department.*

62 P.S. § 403 (Emphasis added). These provisions, taken together, indicate that it is the purpose of the enabling statute and of the regulations to encourage self-dependence of welfare recipients, that great deference is to be afforded the Secretary in his implementation of this purpose, and in fact, that it is the secretary alone who is authorized to establish and interpret rules, regulations and standards for eligibility.

 In applying these principles to the decision of Commonwealth Court, we must examine, first, whether Commonwealth Court's review was carried out in accord with the standards set out in *Forbes Health System,* supra., i.e., to determine whether the agency's interpretation of its regulation was consistent with the regulation itself, and

then whether the regulation is consistent with the enabling statute. It is clear that the agency's interpretation of its regulation is consistent with the regulation itself.[2] The regulation denies eligibility to anyone currently employed or engaged in training, and that is also what the agency interpreted the regulation to mean.[3] We need address

**2.** The one respect in which the agency interpretation may be inconsistent with the regulation is its adjudication of the Pelton case. In that case, Ms. Pelton applied for the one-time grant to repair her automobile on November 20, 1980. She needed automobile transportation not only for her job, but also to attend classes at Williamsport Area Community College, where she had been accepted for full time undergraduate study to begin in January of 1981. The decision of the hearing examiner at the fair hearing indicates Ms. Pelton's application was denied "because she was already employed at the time of the request."

Assuming, arguendo, that Ms. Pelton's request was properly denied because of her employment, there is nothing of record to explain why she would not have been eligible for the one-time grant under the alternate provision of the regulation which allows for a grant to enable the applicant to accept training:

The regulation provides:

A nonrecurring one-time grant may be authorized ... provided an individual shows that these items are needed in order to apply for or to accept employment *or* training which will result in decreasing or preventing his need for assistance.

(Emphasis added). At the time of the request, Ms. Pelton had not yet begun her college classes, the classes presumably would have operated to decrease her need for assistance, and her first trip to the campus would have constituted an "acceptance" of training under the regulation. It is possible, of course, that the classes would not decrease Ms. Pelton's need for assistance, but the agency did not determine that.

Although DPW may take the position that because Ms. Pelton was already employed, she was not needy and therefore not eligible for the grant, *the plain language of the regulation* makes her eligible for the grant to accept training so long as the grant decreases Ms. Pelton's need for assistance. If DPW intends some other result, it should amend the language of the regulation.

**3.** In *Chase v. DPW* a panel of Commonwealth Court held that the words "accept training" in the regulation meant "receive training," and concluded that a person who was already involved in training at the time of application for the one-time grant was, therefore, eligible for the grant. She was "receiving" training at the time of her application. We reject this view as clearly against the plain meaning of the words of the regulation and also as violative of the context of those words. It is clear that the agency intended to exclude from eligibility for the grant anyone who was already employed or who was already receiving training and was applying for a grant for the activity which they were already pursuing.

ourselves, then, only to the second concern, whether the regulation is consistent with the enabling statute.

In holding that the regulation is not consistent with the legislative intent of the enabling statute, Commonwealth Court ignored all indications of legislative intent save the intent to encourage self-dependency and then, forgetting about the clear mandate that the Secretary alone is to determine eligibility, proceeded, as if it were the agency, to devise ways to implement this legislative purpose. By expressing its views as to the best way to implement a general purpose section of the statute, Commonwealth Court, in effect, substituted its wisdom for that of the agency. It fastened onto the general language of Section 401 ("self-dependency") and of the regulation ("apply for or accept employment or training which will result in decreasing or preventing his need for assistance") and treated this language as mandating the promulgation and enforcement of a particular regulation, i.e., one which provides one-time grants both to those already employed and/or in training and also to those applying for employment or training.

■ In general, a court reviewing an agency's interpretation of its regulations may not determine whether the regulations fall within the scope of the enabling legislation *solely* by reference to the general purpose statement of the enabling statute. The reason for this is that statements of general purpose are so broad as to allow for many possible routes of implementation, not a single required route. Normally, it is the agency, not the reviewing court, which will most benefit and take its guidance from the purpose section of the enabling statute, for it is the agency's function, not the reviewing court's, to decide which of *many possible approaches* best implement the legislative intent of the act. Commonwealth Court's proper role, as we stated in *Forbes Health System,* supra, is to ensure that the agency's decisions are made *within the parameters of the law,* not to narrow those parameters or to substitute its wisdom for the agency's in implementing the legislative purpose.

Commonwealth Court's error with respect to deciding whether the regulation is consistent with the enabling statute, in sum, is that it usurped the agency's policy making role by substituting its wisdom for that of the agency rather than decide, by reference to the enabling statute as a whole, not merely the statement-of-purpose section, whether the regulation was consistent with the statute.

If the propriety of Commonwealth Court's decision were all that is raised in the case, our decision would be to reverse the lower court's order and enter summary judgment for the department. However, Pelton and Boudman raise two other matters not addressed by the lower court which require our attention. First, Pelton argues that because the General Assembly substantially revised the Public Welfare Code in 1982, but did not change Section 401, concerning legislative intent, it adopted the interpretation of Commonwealth Court in the *Rodgers, Chase,* and *Bittner* decisions, supra, which invalidated the DPW regulation at issue in this case as to its eligibility distinction between persons employed and unemployed, and between those in training and not in training. The basis for this argument is Section 1922 of the Statutory Construction Act, which in pertinent part provides:

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

\* \* \* \* \* \*

(4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

1 Pa.C.S.A. § 1922. Further, Pelton argues that the Commonwealth Court decisions referred to above are, for the purposes of this act, the decisions of a court of last resort. In *Estate of Lock* this Court stated:

It has been held, and rightly so, that where a decision of the Superior Court construing a statute was never modified by the Supreme Court, the presumption was that

when the legislature subsequently enacted a similar statute dealing with the same subject matter, the legislature intended the same construction to be placed on the language of the subsequent statute.

431 Pa. 251, 263, 244 A.2d 677, 682–83 (1968).

Inasmuch as Section 1922(4) of the statutory construction act concerns the resolution of ambiguities of meaning of particular words and phrases in a statute, and in this case there is no ambiguity to resolve, Pelton and Boudman's argument is without merit. At issue here is not the meaning of "self-dependency," but rather who shall determine, the Commonwealth Court or DPW, the extent to which persons in certain classifications shall be given a particular type of aid. This is a policy matter, not primarily a matter of definition. The claim, therefore, is denied.[4]

■ Next, Pelton and Boudman assert that eligibility for one-time special need grants must be determined on an individual basis. Further, according to Pelton and Boudman, "where an agency attempts to exclude an entire category of persons from eligibility without individualized determination, such classifications will be subjected to close scrutiny."

Pelton and Boudman's argument is derived mainly from federal cases such as *Medora v. Colautti*, 602 F.2d 1149 (3d Cir.1979). In *Medora*, DPW had promulgated a regulation in which it required blind, disabled and aged persons to apply for federal Supplemental Security Income benefits before they applied for state general assistance benefits. The regulation also stated that if any member of this class of persons were denied federal benefits for any reason not related to their blindness, age or disability (e.g., federal

4. Moreover, we are not persuaded that the General Assembly has "enacted a similar statute dealing with the same subject matter" in the sense referred to by the *Lock* Court. Although the legislature revised many aspects of the Public Welfare Code, it left Section 401 (Legislative Intent) unchanged. It did not, therefore, enact "a similar statute"; rather, it did nothing at all with respect to Section 401.

Because of our treatment of this claim, we express no opinion on the continued viability of *Estate of Lock*, supra.

regulations which deny SSI benefits to those whose financial reserves exceed a certain amount, or those living with person of the opposite sex not their spouses who have an income), that federally disqualified person could not then apply for state benefits, even if he would be eligible for state benefits under state criteria. The Circuit Court held that this regulation violated the Equal Protection Clause of the United States Constitution in that it did not rationally further any legitimate government objectives. The Court also noted that although a traditional equal protection analysis requires an inquiry into whether the challenged classification is rationally related to a legitimate governmental interest, *Id.* at 1152, in a case where all benefits are denied, "rather than allocation of amounts of aid," *Id.* at 1154, and where the classification is based on the applicants' status as blind, aged or disabled persons (sensitive but non-suspect classes), *Id,* at 1154, n. 12, the rationality of the classification will be more closely examined.

In the present case, unlike *Medora,* Pelton and Boudman have not been denied *all* benefits; rather, they have been denied more benefits than they would like. Furthermore, the present case involves no sensitive classifications. The appropriate equal protection analysis for this classification, therefore, is the traditional one of whether the challenged classification is rationally related to a legitimate governmental interest. *See James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302 (1984) (the applicability of various equal protection analyses); *U.S. Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973) (the rational basis test applied to regulations denying food stamps to certain persons).

DPW asserts that it distinguishes between aid recipients who are employed and already involved in training, and those who are not employed or involved in training as to their eligibility for the one-time grants because persons already employed and already involved in training are less needy than persons who are unemployed and untrained. In

other words, DPW asserts that it has a rational basis for distinguishing between those currently employed and involved in training and those who are not either employed or in training. Further, it asserts that a major part of its job is to identify those who are in need and those who are not as well as their relative degree of neediness. *See* 62 P.S. §§ 403, 432. Commonwealth Court rejected this argument on the grounds that DPW did not provide an adequate record on which to determine whether those who are already employed and/or in training have adequate resources without the one-time grant.

The standard for determining when a legislative classification regarding noncontractual social welfare benefits is constitutionally sound was recited by the Supreme Court of the United States in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1974), as follows:

> [T]he question raised is not whether a statutory provision precisely filters out those, and only those who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions.... Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than nonmembers. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.

See also *Department of Welfare v. Molyneaux*, 498 Pa. 192, 200, 445 A.2d 730, 734 (1982).

In sum, while prophylactic social welfare classifications may not be made "on the basis of criteria which bear no rational relation to a legitimate legislative goal," *Weinberger v. Salfi*, 422 U.S. at 772, 95 S.Ct. at 2470, 45 L.Ed.2d at 542, failure to receive such benefits does not involve the

curtailment of important Constitutional liberties, and individualized determinations need not be made with respect to eligibility for social welfare benefits "when Congress can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the difficulties of individual determinations outweigh the marginal increments in the precise effectuation of congressional concern which they might be expected to produce." *Id.* at 785, 95 S.Ct. at 2476, 45 L.Ed.2d at 550.

In the present case, the General assembly has delegated rulemaking authority to the agency. The agency, in turn, has promulgated rules as to the eligibility for one-time grants which are rationally constructed to award limited governmental funds to persons most in need. Since there is a rational basis for the classification which promotes a legitimate governmental purpose, and since it is self-evident that individual determinations would be expensive and burdensome, the classification is not constitutionally infirm.

For the foregoing reasons, the order of Commonwealth Court is reversed and summary judgment is entered for DPW on the Boudman case. With respect to Ms. Pelton's appeal, the order of Commonwealth Court is reversed and vacated and the matter is remanded for proceedings consistent with footnote 2, supra. The motion to quash the direct appeal of the class action is granted because issues identical to those raised in the class action are raised and adjudicated in the individual cases. This identity of issues, in a declaratory judgment case, renders the class action superfluous and issue of its appealability moot.

LARSEN, J., filed a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent.

Not only do I find appellant Department of Public Welfare's (DPW) deliberate choice to ignore the rulings of Commonwealth Court to be contemptible, that choice is morally reprehensible as well. There will never be a way to

determine exactly how many good citizens of this Commonwealth were unable to regain the dignity of a useful and productive life during the economic crisis of this decade because of appellant's begrudging and distorted interpretation of the special needs regulation. In this regard, I adopt the decision in this case of Judge MacPhail as my own. *Pelton v. Commonwealth, Department of Public Welfare*, 92 Pa.Commw. 181, 498 A.2d 1380 (1985).

A working automobile, protective clothing, uniforms and tools are just as critical to those collecting public assistance who are already employed or in training as are such items to those readying themselves for a new job or training program where the household budget cannot accommodate these expenses. The majority's holding today will ensure that the Anna Peltons and Nancy Boudmans of this Commonwealth will be forced to lose their jobs or drop out of training and then again search for employment or apply for another training program before appellant will advance the funds to repair worn-out vehicles.[1] I seriously doubt that the enabling legislation contemplates such a result.

Furthermore, I note that appellant *also* filed for summary judgment in this case and find its request to remand for purposes of the introduction of more evidence to be incomprehensible. Appellant on the one hand argues that persons in the position of appellees can afford to repair their cars, pointing to documents of record which allegedly prove its point; yet, on the other hand, appellant argues that it needs a trial to prove that those who are employed and/or in training are less needy than those who are unemployed and not in training. The majority agrees with this position and states that a remand is necessary to adjudicate the

---

1. Anna Pelton testified that she was told to withdraw from her college courses for failure to attend, and that she was bringing home a slimmer pay check due to missed work. The cost of repairs already made to her automobile resulted in delinquent utility bills and less food on the table. Hearing on Appeal (Feb. 13, 1981). Nancy Boudman testified that she depended upon others to transport her to her job and had missed work when those others were on vacation and not commuting. She feared losing her job if she continued to fail to report to work. Hearing on Appeal (Feb. 5, 1981).

equal protection challenge to appellant's classification of eligible recipients of the one-time special needs grants. Maj. op. at 334–335. Inasmuch as it took this case six years to reach us in its present posture, I expect that the equal protection argument will be made before this body in the early 1990s. I cannot imagine that Anna Pelton's or Nancy Boudman's cars will be amenable to any rehabilitation at that late date.

Without transportation or the proper clothing or tools for a job or training program, public assistance recipients will require more than partial assistance when they lose their jobs because they lack what is required "to apply for or to accept employment or training." The majority is cutting off its nose to spite its face.

Accordingly, I dissent and would affirm the order of Commonwealth Court granting appellees' motion for summary judgment and denying appellant's cross-motion for summary judgment.