BUFFALO TOWNSHIP

v.

Carl E. JONES, Katheryn L. Jones, Larry W. Tredway, Kassie Tredway, David C. Jones, Sylvia J. Jones, Jerry Purcell and Margie Purcell, Appellants.

Commonwealth Court of Pennsylvania.

Argued May 7, 2001.

Decided June 14, 2001.

**1270**

William Claney Smith, Pittsburgh, for appellants.

Lawrence P. Lutz, Butler, for appellee.

Alexander H. Lindsay, Jr., Butler, for amicus curiae, Summit Township.

Before COLINS, Judge,
PELLEGRINI, Judge (P.), and
RODGERS, Senior Judge.

PELLEGRINI, Judge.

Carl E. Jones, Katheryn L. Jones, Larry W. Tredway, Kassie Tredway, David C. Jones, Sylvia J. Jones, Jerry Purcell and Margie Purcell (collectively, Property Owners) appeal from an order of the Court of Common Pleas of Butler County (trial court) granting a permanent injunction enjoining them from blocking or obstructing a recreational trail or threatening, intimidating or coercing agents and employees of Buffalo Township or users of the trail.

This controversy involves a dispute over whether a 20.7–mile long right-of-way formerly known as the Butler Branch of a railway owned and operated by Consolidated Rail Corporation (Conrail) has been abandoned and, if not abandoned, whether it can be used by Buffalo Township as a recreational trail. In the late 1860s, Conrail (formerly known as the Western Pennsylvania Railroad Company) constructed the Butler Branch that ran between Freeport, Armstrong County and Butler, Butler County. In the process of constructing the railway, Conrail secured rights-of-way and easements over privately-owned property through condemnation proceedings and right-of-way agreements.[1]

Pursuant to Section 308 of the Regional Rail Reorganization Act of 1973, 45 U.S.C. § 748, Conrail notified the Interstate Commerce Commission (ICC)[2] of its intent to file an application for abandonment of the Butler Branch railroad line due to insufficient revenue on October 31, 1985. Subsequently, Conrail filed a request for approval of abandonment of the railroad line with the ICC on June 5, 1987. On September 14, 1987, the ICC issued a Certificate of Decision and Order authorizing Conrail to abandon the 20.7 mile of the railroad line known as the Butler Branch.

In the early spring of 1990, B. Sykes Ltd., a salvage company, purchased the rails and ties from Conrail on the right-of-way and removed the rails and ties along the railroad line. On June 11, 1991, Conrail conveyed by quitclaim deed all of its rights, title and interest in the property to

---

1. The Butler Branch railway line ran from the City of Butler through the Townships of Butler, Buffalo, Jefferson, Summit and Winfield. However, only Buffalo Township is a party to this action.

2. On January 1, 1996, the ICC ceased to exist and its duties were transferred to the Surface Transportation Board ("STB") in the Department of Transportation. ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803 (1995).

B. Sykes Ltd. who, in June 1991, in turn, conveyed by quitclaim deed all of its rights, title and interest in the property to Buffalo Township on June 14, 1991.

■ In 1992, Buffalo Township began to develop the railway property as a recreational trail pursuant to the Pennsylvania Rails to Trails Act, Act of December 18, 1990, P.L. 748, 32 P.S. §§ 5611–5622 (Pennsylvania Trails Act), and the National Trails System Act, 16 U.S.C. §§ 1241–1251 (National Trails Act). Seeking to enjoin adjacent property owners from interfering with the public's use of the trail, Buffalo Township filed a complaint in equity and simultaneously filed a motion for preliminary injunction which the trial court granted. Ultimately, the trial court granted a permanent injunction based on its finding that Conrail did not abandon the right-of-way, and Buffalo Township had the authority under the National Trails Act to construct the recreational trail and enjoined Property Owners from blocking or obstructing the trail in any way, threatening, intimidating or coercing agents and employees of Buffalo Township or any individuals using the trail. This appeal followed.[3]

### I.

■ Normally, a railroad right-of-way terminates and the property interest reverts back to the property owner when the land ceases to be used for railroad purposes. *See Brookbank v. Benedum–Trees Oil Company,* 389 Pa. 151, 131 A.2d 103 (1957); *Quarry Office Park Associates v.* *Philadelphia Electric Company,* 394 Pa.Super. 426, 576 A.2d 358 (1990); *Lacy v. East Broad Top Railroad & Coal Co.,* 168 Pa.Super. 351, 77 A.2d 706 (1951). Property Owners contend that because the right-of-way has ceased being used for railroad purposes, interest in the property reverts to them under Pennsylvania law.

While that is normally true, in order to establish a nationwide system of nature trails, Congress enacted the National Trail Systems Act, 16 U.S.C. §§ 1241–1251, *as amended,* in 1968.[4] Under this Act, Congress reserved to itself the right to designate scenic and historical trails, and delegated to the Secretaries of the Interior and Agriculture the authority to designate recreational trails and to develop and administer the trails system. *See* 16 U.S.C. §§ 1243, 1244 and 1246. The Act further provided that state or local governments or federal authorities could acquire the land necessary for a designated trail through cooperative agreements with landowners or by purchase; however, if all voluntary means for acquiring the right-of-way failed, the appropriate Secretary was given limited power to utilize condemnation proceedings in order to acquire private lands. 16 U.S.C. § 1246.

Concerned about the substantial decrease in railway tracks throughout the country and in an effort to preserve railroad rights-of-way by converting unused rights-of-way to recreational trails, Congress enacted substantial amendments to the National Trail Systems Act in 1983.

---

**3.** Our scope of review in cases involving a permanent injunction is limited to whether the trial court abused its discretion or committed an error of law. *Licensed Beverage Association of Philadelphia v. Board of Education of the School District of Philadelphia,* 669 A.2d 447 (Pa.Cmwlth.1995).

**4.** The Pennsylvania Rails to Trails Act operates as an enabling act authorizing the Pennsylvania Department of Environmental Resources to participate in abandonment proceedings before the ICC for the purposes of acquiring available railroad rights-of-way for use as interim trails or railbanking and authorizing the department, counties or municipalities to accept title, by gift or purchase, to available railroad rights-of-way for interim trail use.

*See* 16 U.S.C. §§ 1241–1251. Those amendments authorized the ICC to preserve for possible future railroad use rights-of-way not currently in service and to allow interim use of the land as recreational trails. 16 U.S.C. § 1241. Section 8(d) of the National Trail Act provides that a railroad wishing to cease operations along a particular route may negotiate with a state, municipality or private group that is prepared to assume financial and managerial responsibility for the right-of-way. 16 U.S.C. § 1247(d).

The constitutionality of the National Trails Act was addressed by the United States Supreme Court in *Preseault v. Interstate Commerce Commission,* 494 U.S. 1, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990). Concluding that the Act was reasonably adapted to two legitimate congressional purposes under the Commerce Clause—preserving rail corridors for future railroad use and permitting public recreational use of trails, the Court upheld the constitutionality of the National Trails Act as a valid exercise of congressional power under the Commerce Clause. In doing so, it held that railroad rights-of-way could be converted into recreational trails notwithstanding whatever reversionary property interests existed under state law.

The Court also addressed whether the National Trails Act violated the Fifth Amendment by precluding reversion of state property interests resulting in a taking of the underlying property owners' future interest in the railroad right-of-way. Although not determining whether a taking had occurred in the case before it, the Court held that a violation of the Fifth Amendment only occurred where there was a taking of private property for public use without just compensation. The Court further determined that the Fifth Amendment merely required that compensation be made, not that compensation be paid prior to or contemporaneously with the taking. At the time of the actual taking, the only requirement was the presence of a "reasonable, certain and adequate provision for obtaining compensation" and that the property owner had no claim that an unconstitutional taking has occurred unless he or she had first utilized the available provision and received no compensation.

Because even if a taking had occurred, the property owners in *Preseault* had a sufficient remedy under the Tucker Act, 28 U.S.C. § 1491(a)(1), or the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (creating concurrent jurisdiction in the district courts for such claims not exceeding $10,000 in amount), the Court held that the Fifth Amendment was not violated. Accordingly, where a railroad right-of-way was transformed into a recreational trail further burdening the property owner's fees simple interest, the property owner was forced to seek added compensation either under the Tucker Act or for a *de facto* taking under Section 502 of the Pennsylvania Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–502. In this appeal, Property Owners do not make any challenge that there was any uncompensated taking but simply that the National Trails Act does not apply.

## II.

 The first reason that Property Owners contend that the National Trails Act does not apply to this case is because that Act requires that a state, political subdivision or private interest reserve a railroad right-of-way for interim use while an abandonment proceeding is ongoing where, in this case, the railroad right-of-way was abandoned in 1987 by order of the ICC. It argues that once abandonment proceedings were completed, the railroad right-of-way had been dissolved and could

not be rail banked for future railroad purposes or utilized for an interim use under the Act, and, therefore, Buffalo Township had no right to develop the right-of-way as a recreational trail. While they acknowledge that for there to be an abandonment of a railroad right-of-way, there must be an actual abandonment demonstrated by intent to abandon accompanied by external acts effecting that intention, *id.; Burnier v. Department of Environmental Resources,* 148 Pa.Cmwlth. 530, 611 A.2d 1366 (1992), Property Owners argue that the facts of this case establish both an intent on the part of Conrail to abandon the Butler Branch and external acts effectuating that intention, which include the following:

- On October 31, 1985, Conrail filed a Notice of Insufficient Revenues with the ICC.
- On June 8, 1987, Conrail requested approval from the ICC to abandon the Butler Branch pursuant to 45 U.S.C. § 748.
- On September 14, 1987, the ICC issued a Certificate and Decision approving Conrail's request to abandon the Butler Branch.
- Conrail terminated railroad service prior to December 31, 1987.
- Conrail sold rails and ties to B. Sykes, Ltd., a salvage company, in the spring of 1990.
- B. Sykes, Ltd. removed the rails and ties from the Butler Branch.
- On June 7, 1990, Buffalo Township requested an Interim Trail Use from the ICC but later withdrew the request.
- The ICC acknowledged Buffalo Township's decision to withdraw its request and discontinued the proceeding.
- On June 11, 1991, Conrail, by quitclaim deed, conveyed all of its right, title and interest in the Butler Branch to B. Sykes, Ltd.

- On June 14, 1991, B. Sykes, Ltd., by quitclaim deed, conveyed all of its right, title and interest in the Butler Branch to Buffalo Township.

Buffalo Township, however, argues that it is clear that Conrail did not abandon its right-of-way because in conveying its interest in the right-of-way to B. Sykes Ltd., it reserved the right to re-enter the right-of-way to resume railroad activities as evidenced by the language of the quitclaim deeds from Conrail to B. Sykes Ltd. and subsequently from B. Sykes Ltd. to Buffalo Township. Specifically, Buffalo Township relies on the following language of the deed from Conrail to B. Sykes Ltd.:

EXCEPTING AND RESERVING, thereout and therefrom and unto the said Grantor, permanent, perpetual, exclusive and assignable easements and rights for ingress and egress purposes in, on, over, under, above, across, through and along the southerly end of the premises hereinbefore described for access to and from a public street and to the northerly end of Grantor's remaining property at Mile Post 0.6 and as indicated on Case Plan No. 69593, sheet 1 of 22.

\* \* \*

Grantor and Grantee contemplate that Grantor shall (a) operate its trains, cars and engines to or on the land hereinbefore described (or any portion thereof), (b) establish or maintain a track connection with Grantee, or (c) provide cars or car service to Grantee. The Grantee agrees that such activities shall be conducted only on such terms and conditions as Grantor and Grantee hereto may hereafter mutually agree upon in writing and Grantor shall not be called upon to operate its cars, engines or equipment on any part of the land hereinbefore described or to accept any obligations unless they are in a written

agreement between Grantor and Grantee hereto.

■ Likewise, Buffalo Township argues that Conrail's reservation of the right to re-enter the property was acknowledged and preserved in the quitclaim deed between B. Sykes Ltd. and itself which stated, in part:

> EXCEPTING AND RESERVING, thereout and therefrom and unto the said Consolidated Rail Corporation, permanent, perpetual, exclusive and assignable easements and rights for ingress and egress purposes in, on, over, under, above, across, through and along the southerly end of the premises hereinbefore described for access to and from a public street and to the northerly end of Consolidated Rail Corporation's remaining property at Mile Post 0.6 and as indicated on Case Plan No. 69593, sheet 1 of 22.[5]

■ Property Owners at oral argument contended that the language of the deed only involved Conrail's access while the removal of the track was underway and in no way indicated that Conrail did not intend to permanently abandon the right-of-way. While that language is a reasonable interpretation of those provisions, Buffalo Township's interpretation of the language that Conrail reserved a right to re-enter the property in order to resume its previous railroad activities or to

reconstruct its rail line is equally reasonable. Where, as here, the language in a contract is ambiguous and subject to different reasonable interpretations, what the agreement means is determined by the surrounding facts and circumstances and is a decision for the trier of fact. *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 519 A.2d 385 (1986).[6] Because, as the trier of fact, the trial court found that the language of the deeds reserved the right to re-enter the property to Conrail, absent an abuse of discretion, we must defer to that determination. *See In re Hall,* 731 A.2d 617 (Pa. Superior 1999).

■ In this case, while Conrail petitioned for and received approval from the ICC to abandon its rail line and subsequently, by quitclaim deed, conveyed its interest in the property to a salvage company, that alone is not sufficient to establish abandonment. Because a conclusion that abandonment has occurred is so severe because it forever extinguishes the right-of-way, even a certificate approving abandonment or that the rail line has not been used or has been transferred to a non-railroad entity is not sufficient. *See e.g. Birdsboro Municipal Authority v. Reading Company and Wilmington & Northern Railroad,* 758 A.2d 222 (Pa. Superior 2000); *Burnier; Quarry Office Park Associates; Lawson v. Simonsen,* 490 Pa. 509, 417 A.2d 155 (1980); *Lacy.*

---

**5.** Buffalo Township also argues that Conrail could not have abandoned the right-of-way because Pennsylvania law requires that a railroad seek approval from the Pennsylvania Public Utility Commission (PUC) before it can abandon a right-of-way. Specifically, it argues that because Section 2709 of the Public Utility Code, 66 Pa.C.S. § 2709, requires that before disposing of real property previously used as a railroad bed a public utility engaged in a railroad business must notify the township in which the real property is located and any disposition of property without complying with the section is voidable, Conrail could not have abandoned its property without follow-

ing those notification requirements. However, Section 2709 of the Public Utilities Code does not conclusively bar a railroad from abandoning its right-of-way but it merely provides that a transfer of property is voidable. Therefore, it does not invalidate the transaction automatically.

**6.** An ambiguity exists if the language is subject to two or more reasonable interpretations. *Drummond v. University of Pennsylvania,* 651 A.2d 572 (Pa.Cmwlth.1994), *petition for allowance of appeal denied,* 541 Pa. 628, 661 A.2d 875 (1995).

Here, the trial court found that Conrail, in conveying its interest in the right-of-way to B. Sykes Ltd., and consequently to Buffalo Township, reserved a right to re-enter the property and to establish or maintain a rail line for potential future railroad activities upon the right-of-way and that Conrail did not intend to abandon the right-of-way. *See e.g. Birdsboro.* Because the trial court did not abuse its discretion in finding that Conrail did not abandon the right-of-way, Property Owners failed to establish that Conrail abandoned the right-of-way prior to Buffalo Township's acquisition.[7]

## III.

■ Even if the railroad right-of-way was not abandoned, Property Owners contend that Buffalo Township had no authority to develop and operate a recreational trail under the National Trails Act because that Act requires that a trail sponsor seeking to transform a former railroad right-of-way into a recreational trail receive approval in the form of an Interim Trail Use from the ICC, which Buffalo Township failed to obtain. Specifically, they argue that Buffalo Township failed to comply with the requirements of 49 C.F.R. § 1152.29, which provides that a political subdivision must file a petition indicating that it would like to use a rail line as a recreational trail. That section provides in part:

Prospective use of rights-of-way for interim trail use and rail banking.

(a) If any state, political subdivision, or qualified private organization is interested in acquiring or using a right-of-way of a rail line proposed to be abandoned for interim trail use and rail banking pursuant to 16 U.S.C. 1247(d), it must file a comment or otherwise include a request in its filing (in a regulated abandonment proceeding) or a petition (in an exemption proceeding) indicating that it would like to do so.

While Buffalo Township concedes that it did not follow the procedure set forth in the ICC regulations promulgated under the National Trails Act at 49 C.F.R. § 1152.29, it argues that the National Trails Act does not require a municipality to obtain ICC approval in order to develop and operate a recreational trail pursuant to the Act. In support of its contention, Buffalo Township relies on an ICC decision denying an interim trail use application because it lacked jurisdiction over the abandonment of a railroad spur track wherein the ICC stated:

We are revoking our notice of interim trail use because we only have the authority to impose trail use conditions where we can authorize abandonment under 49 U.S.C. 10903 or 10505. Because the track at issue here is a spur,

7. Even if Conrail terminated its railroad service, Buffalo Township contends the right-of way would not have been abandoned because Conrail, through its predecessor, the Western Pennsylvania Railroad Company, acquired the right-of-way property pursuant to the General Railroad Act of 1849, Act of February 19, 1849, P.L. 79, which provides, in part, "[t]hat upon the completion of any railroad authorized as aforesaid, the same shall be esteemed a public highway for the conveyance of passengers and the transportation of freight." Section 18 of the General Railroad Act of 1849. Under Section 18 of that Act, the right-of-way does not revert to Property

Owners if the General Assembly desires to use it for a highway. What this provision seems to be saying is that the land was not only taken for a railroad right-of-way but also for a public highway. Section 20, though, requires that compensation be paid if the property is going to be used for such a purpose. Even though that is evidence that the right-of way would not have been abandoned, the Commonwealth has not adopted the right-of-way for highway purposes, so Buffalo Township cannot use that as an argument that it has a right to use the right-of-way as a trail which it contends is nothing more than a pedestrian highway.

we do not have such jurisdiction over it. *We note, however, that the underlying right-of-way can be preserved under 16 U.S.C. 1247(d) without ICC authorization. The second sentence of section 1247(d) applies to "any established railroad rights-of-way" and the statute itself provides that their interim trail use "shall not be treated . . . as an abandonment of the use of such rights-of-way for railroad purposes."* Southern Pacific Transportation Company—Exemption—Abandonment of Service in San Mateo County, California, (Docket No. AB–12, slip op. filed February 20, 1991) (emphasis added).

To determine whether Congress intended to require states, political subdivisions or private entities to obtain ICC approval before developing and operating a recreational trail on a railroad right-of-way as an interim use, we look to the language of the National Trails Act. Section 8(d) of the Act, 16 U.S.C. § 1247(d), provides:

Interim use of railroad rights-of-way.

The Secretary of Transportation, the Chairman of the Surface Transportation Board, and the Secretary of the Interior, in administering the Railroad Revitalization and Regulatory Reform Act of 1976 [45 U.S.C. § 801 et seq.], shall encourage State and local agencies and private interests to establish appropriate trails using the provisions of such programs. Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if

such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes. If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Board shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

■ Nowhere in Section 1247(d) does the Act require a municipality, which has accepted full responsibility for management of the right-of-way, including legal and financial liability arising out of its use *as a recreational trail,* to obtain approval from the ICC in order to take advantage of the protections of the Act. Moreover, the clear intent of Congress in enacting the National Trails Act—to encourage states, public subdivisions and private interests to establish trails in an effort to preserve for possible future railroad use of rights-of-way not currently in use, 16 U.S.C. § 1247(a),—clearly supports the ICC's interpretation. Because the ICC in *Southern Pacific Transportation Company* concluded that a railroad right-of-way can be preserved for interim use as a recreational trail pursuant to the National Trails Act without ICC authorization, and that interpretation does not conflict with the clear language and intent of the Act and is reasonable, we will defer to their interpretation.[8]

8. In reviewing an agency's interpretation of a statute and its own regulations, unless the

Because Buffalo Township was not required to obtain ICC approval to develop and operate a recreational trail and has fulfilled all of the requirements set forth in Section 8(d) of the National Trails Act, including assuming full responsibility for management of the right-of-way and for any legal or financial liability arising out of the operation of the recreational trail, it was entitled to develop the right-of-way for interim trail use purposes pursuant to the National Trails Act.[9]

Accordingly, because Conrail did not abandon its railroad right-of-way and Buffalo Township was entitled to develop and operate a recreational trail pursuant to the National Trails Act, injunctive relief enjoining Property Owners from interfering with the public's use of the trail was appropriate and the decision of the trial court is affirmed.

### ORDER

AND NOW, this *14th* day of *June*, 2001, the order of the Court of Common Pleas of Butler County, No. 00–50009, dated July 31, 2000, is affirmed.

language is clear, we are required to defer to the agency's interpretation of the statute and its own regulations. *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Tool Sales & Service Co. v. Commonwealth,* 536 Pa. 10, 637 A.2d 607 (1993); *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *Pelton v. Com., Dept. of Public Welfare,* 514 Pa. 323, 523 A.2d 1104 (1987).

9. Property Owners also contend that the trial court erred in failing to submit the abandonment issue to a jury. However, because this action was brought in equity, even if the issue had been submitted to a jury, that determination would have been merely advisory and the final decision on the issue would have been made by the trial court. *See* Pa. R.C.P. 1513. Additionally, Property Owners contend that the trial court erred in finding that an immediate need for relief and irreparable harm existed. However, because those are factors to be considered in a preliminary injunction proceeding rather than a permanent injunction proceeding, we need not address those issues.