Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant *v.* Westmoreland Republican Club, Appellee.

Argued November 18, 1981, before Judges MEN-CER, BLATT and CRAIG, sitting as a panel of three.

*J. Leonard Langan,* Counsel, with him *James J. Fitzgerald, III,* Chief Counsel, for appellant.

*F. Emmett Fitzpatrick,* for appellee.

OPINION BY JUDGE MENCER, March 30, 1982:

This is an appeal by the Pennsylvania Liquor Control Board (Board) from an order of the Court of Common Pleas of Philadelphia County which vacated the Board's 20-day suspension of the club liquor li-

cense of the Westmoreland Republican Association, trading as Riverside East Club (Club).[1]

The Board's order was based upon two findings of fact made by it:

1. The licensed organization, by its servants, agents or employes sold liquor and/or malt or brewed beverages on the licensed premises to a non-member, on December 30, 31, 1978.

2. Persons were admitted to membership in the licensee's licensed organization without written application, investigation and ballot, on December 31, 1978.

The Club filed an appeal from the Board's order. After a de novo hearing, on April 10, 1980, the Court of Common Pleas of Philadelphia County vacated the Board's order of suspension and ordered the Club to pay a fine of $250. The Board filed an appeal to this Court, and we reverse.

At the hearing before the lower court, Bettina Bunting, an enforcement officer of the Board, testified that she visited the Club at 4500 Ridge Avenue, Philadelphia, on December 30, 1978, at 1:30 a.m. She was met by a doorman who inquired whether she was a member. When she said no, the doorman asked her whether she knew any club members and what her employment was. Officer Bunting told the doorman that she did not know any members, that she was a waitress in center city, Philadelphia, and that she wished to become a club member. Although she testified that she offered to leave, the doorman told her she could stay, if she completed an application for membership. She testified that the doorman instructed her to complete the application in the bar

---

[1] The case on appeal to this court incorrectly reflects the designation of the appellee to be "Westmoreland Republican Club."

area. While in the bar area, she ordered, was served, and paid for, three drinks of Cutty Sark Scotch whiskey and water. Upon departing the Club that evening, Officer Bunting attempted to return the completed application to the doorman, but he told her that he was too busy and that she should bring it with her on her next visit. The officer returned to the Club the following night at 2 a.m. She gave the completed application and the required $10 membership fee to a different doorman who promptly gave her a pre-signed, prestamped membership card on which he wrote her name. Thereafter, she proceeded into the bar area and ordered, was served, and paid for, three drinks of vodka and tomato juice.

Before the lower court, the Club presented the testimony of John Cocivera, its financial secretary and membership committee chairman. Mr. Cocivera testified that, when Officer Bunting arrived on December 30, 1978 and expressed an interest in applying for Club membership, she was provided with an application and asked to enter the club room, an area separate and apart from the bar area, to complete it. While she completed the application in the club room, Mr. Cocivera testified that he made several inquiries of her pertaining to her residence and occupation. He testified that his inquiries were in the nature of small talk and that the Club generally made a superficial investigation of new members because the Club cannot investigate race, religion, and financial background, for fear of violating the civil rights laws. Mr. Cocivera testified that Officer Bunting's membership application was processed according to normal practice. After Mr. Cocivera questioned the officer and she had completed the application, he approved it and informed her that, once the application was approved, she was a member of the Club and could

enter the bar area. Mr. Cocivera told her, however, that he would not be able to provide her with a membership card that night because the club seal had been locked away for the evening. He informed her that she would receive the membership card when she next visited and paid the required $10 membership fee. Mr. Cocivera also testified that the following day he prepared Officer Bunting's membership card, signed it, embossed it with the Club's seal, and left it in an envelope with the doorman to give to her when she next visited. Finally, according to the testimony of Mr. Cocivera, the Club's board of directors had delegated to any member of the 3-man membership committee, of which Mr. Cocivera was a member, the power to investigate and approve applications for membership. The names of any individuals so approved are submitted monthly at the regular meeting of the membership for approval.

After receiving the above testimony, the lower court made the following findings of fact:

1. Officer Bunting was not a member of Riverside East on December 30, 1978. The licensee, therefore, sold liquor on the licensed premises to a non-member on that date.

2. Officer Bunting had become a member of the club before she purchased liquor on her second visit. Consequently, there was no violation of the Liquor Code on December 31, 1978.

3. The procedure by which Officer Bunting was admitted into membership in Riverside East did not constitute a 'ballot.' The licensee, therefore, violated Section 1-102 of the Liquor Code.

A court of common pleas may not modify an order of the Board suspending a club liquor license without making findings of fact which differ materially from

those found by the Board. After hearing the evidence before it, the lower court determined that Officer Bunting was a member of the Club when she visited on the second evening. Assuming that the lower court's findings differed materially from the findings of the Board, the lower court would have been justified in modifying the penalty imposed by the Board. However, the lower court's finding that the officer was a member when she entered the Club on the second evening and purchased three drinks is unsupported by law or evidence. Sections 102 and 406 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§1-102, 4-406, provide that no liquor may be sold by club licensees to nonmembers and that admission to membership shall be by written application, investigation, and ballot. *See also Veterans of Foreign Wars Liquor License Case,* 208 Pa. Superior Ct. 78, 220 A.2d 407 (1966). The sale of liquor by a club licensee to one who merely applies for membership is as much a violation of the Code as is the sale of liquor to a nonmember. *Italian Citizens National Association of America Liquor License Case,* 178 Pa. Superior Ct. 213, 115 A.2d 881 (1955).

The Club contends that the lower court did not capriciously disregard the evidence of the lack of ballot with respect to Officer Bunting's admission to the Club on December 31, 1978. Moreover, the Club contends that no case in Pennsylvania defines or describes what constitutes a ballot for the purposes of Section 1-102 of the Liquor Code. Pertaining to what constitutes a ballot for purposes of that section of the Code, this Court is impressed with the language and logic of the lower court, which stated:

The Court must first consider the violation involving Section 1-102 of the Liquor Code,

which requires that a club 'admit members by written application, investigation and ballot.' 47 P.S. §1-102. The licensee points out that its Board of Directors is itself chosen by direct ballot of the membership and that it voted to delegate authority to approve new members to a single agent. Therefore, it is suggested, the votes of both the membership and the Board are somehow transferred to the agent whose unilateral action constitutes a 'ballot.'

This Court cannot accept such a tortured interpretation of that word. A 'ballot' is a system of voting, implying the participation of two or more individuals, although the Liquor Code is clearly not sufficiently precise in indicating whether such a vote must be by the membership as a whole or may be by a smaller duly-constituted membership committee, as would appear more reasonable. However, the delegation of such authority to one individual does not fall within the meaning of 'ballot.' The Court, therefore, finds that the procedure by which members were admitted to club membership did violate Section 1-102. (Footnote omitted.)

The court below erred, however, when it continued:

Since both the licensee and the PLCB agree that Ms. Bunting actually paid her membership fee and received her membership card only on her second visit, December 31, 1978, the Court would agree with the PLCB that the evidence does indicate a violation of the Liquor Code on December 30, 1978. However, it is of the opinion that the testimony presented could support a finding that Ms. Bunting was in fact a mem-

ber of the Riverside East before she purchased drinks on the second visit.[2]

[2] As heretofore indicated, she may not have been admitted in accordance with board requirements. This would not affect the fact, however, that from the licensee's perspective, she was a club member on December 31, 1978.

This Court, therefore, holds that the Commonwealth has not proved a violation of the Liquor Code by sale of liquor to non-members on December 31, 1978.

The lower court's reasoning in its second footnote is not persuasive. As set out above, the legislature has established criteria for the admission of new members to licensed clubs for purposes of the Liquor Code. The Code requires that a club admit new members by written application, investigation, and ballot. The procedure utilized by the Club herein did not satisfy that procedure; no ballot was ever taken. Officer Bunting, therefore, was not admitted to membership in the Club in accordance with Code requirements which establish an objective test for the adequacy of new club admissions. The subjective and even good faith belief of the Club or its officers that Officer Bunting was, as of December 31, 1978, a club member is completely irrelevant. First, a liquor sale by a club licensee to a nonmember constitutes a violation regardless of intent. Second, club licensees cannot be allowed, in effect, to adjudicate whether they have violated the Liquor Code by alleging that they felt they were complying with the law. The so-called membership in the club herein obtained by the mere payment of $10 and the approval of the Club financial secretary and membership committee chairman is not the kind of membership which the law contemplates

in giving a privilege to an organization which obtains a club liquor license.

Therefore, we enter the following

ORDER

AND Now, this 30th day of March, 1982, the September 9, 1980 order of the Court of Common Pleas of Philadelphia County at No. 2361 June Term, 1979 is reversed, and the 20-day suspension of club liquor license No. C-1110, issued to Westmoremland Republican Association, is reinstated. The licensee is hereby directed to surrender said license to a duly authorized agent of the Pennsylvania Liquor Control Board, in accordance with a further order of said Board consistent with this order.

Judge PALLADINO did not participate in the decision in this case.