Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant v. American Legion Home Assn. of Cresson, Appellee.

Submitted on briefs March 12, 1984, to Judges WILLIAMS, JR., CRAIG and COLINS, sitting as a panel of three.

504

*Gary F. DiVito*, Chief Counsel, with him, *Felix Thau*, Assistant Counsel, for appellant.

*Richard J. Green, Jr.*, for appellee.

OPINION BY JUDGE CRAIG, April 12, 1984:

The Pennsylvania Liquor Control Board appeals a decision of Judge ABOOD of the Court of Common Pleas of Cambria County, which reversed the board's order imposing a three-day suspension of the catering club license held by the American Legion Home Association of Cresson.

The board's order is based on its finding of fact that the American Legion had violated the Pennsylvania Liquor Code[1] by making sales to non-members "without prior arrangement for such services."

Generally, a club may serve alcoholic beverages to non-members only if it has a catering club license[2] and certain conditions are fulfilled, in accordance with section 5.83 of the board's regulations, 40 Pa. Code §5.83, which provides:

(a)  Catering, for the purpose of this section, means the furnishing of liquor or malt or

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 to 9-902.

[2] 47 P.S. §4-406(a)(1) provides in part:

No club licensee nor its officers, servants, agents or employes other than one holding a catering license, shall sell any liquor or malt or brewed beverages to any person except a member of the club.

brewed beverages, or both, to be served with food on the premises or brought onto the premises already prepared, for the accommodation of groups of nonmembers who are using the facilities of the club *by prior arrangement,* made at least twenty-four hours in advance of the time for private meetings or functions, such as dances, card parties, banquets, and the like; and which is paid for by such nonmembers.

(b) *A record shall be maintained showing the date and time catering arrangements were made,* the name of the person or organization making the arrangements, and the approximate numbers of persons to be accommodated. (Emphasis added.)

Where, as here, a licensee appeals a board order, the court of common pleas must address the matter de novo, and "shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court." 47 P.S. §4-471; *see Margolis Wines & Spirits, Inc. v. Pennsylvania Liquor Control Board,* 70 Pa. Commonwealth Ct. 302, 453 A.2d 43 (1982).

We must determine whether the common pleas court erred[3] in reversing the board on the ground that there was insufficient evidence to sustain the charged violation.

On the evening of October 16, 1981, a PLCB enforcement officer visited the American Legion, but

---

[3] This court's scope of review of a common pleas court order reversing a Liquor Control Board suspension of a liquor license is limited to a determination of whether the court abused its discretion or committed an error of law. *Pennsylvania Liquor Control Board v. Fort Washington Inn Operating Co.,* 72 Pa. Commonwealth Ct. 542, 457 A.2d 172 (1983).

was refused service because he could not produce a membership card. On the following evening, October 17, 1981, the officer returned to the club, and found two men stationed at the entrance collecting money and issuing admission tickets to the Muscular Dystrophy benefit dance being held there that evening. Although the officer did not produce a membership card, the men sold him a ticket and permitted him to enter the club, where he purchased several alcoholic beverages. On the basis of the officer's report of the October 17 events, the board issued a citation against the American Legion.

In a liquor license suspension case, the board has the burden of proving that a violation of the law has occurred. *In the Matter of Center City Dining Club,* 44 Pa. Commonwealth Ct. 437, 404 A.2d 719 (1979).

The board here asserts that the Muscular Dystrophy organization made no prior arrangements with the American Legion to hold the dance, but that the American Legion was simply sponsoring the dance and planned to donate a portion of the profits to Muscular Dystrophy.[4]

Because of the detailed bookkeeping a catering club licensee is required to keep under board regulation section 5.83(b), the fact of prior arrangements should be relatively easy to establish by consulting the club's records. However, neither the board nor the club introduced any such records into evidence.

In the hearing de novo before the common pleas court, the only evidence on this key issue came from

---

[4] The board's concern is that permitting catering club licensees to sponsor fund-raising activities for charities without requiring the charities themselves to make advanced arrangements is tantamount to permitting those licensees to operate as if under a restaurant license for service to the general public.

the following cross-examination of an American Legion witness:

Q: I know it was a Muscular Dystrophy Dance, but this was a club sponsored event, wasn't it, and some of the money was going to go to Muscular Dystrophy, isn't that what was going on?

A: Yes, profits, yes.

Q: So the club sponsored this event, didn't they? Muscular Dystrophy didn't sponsor the event, you were giving the money to Muscular Dystrophy, right?

A: Right.

Earlier testimony[5] of the same witness had established that he was only responsible for booking the *entertainment* for affairs held at the club, rather than booking the *affairs* themselves, thereby diminishing the credibility and weight of his testimony regarding who actually sponsored the dance. Questions of wit-

---

[5] Q I want to get the dates correct. You testified that the club made arrangements with Muscular Dystrophy?

A With the Home Association.

Q Which Home Association is that?

A The Home Association, American Legion.

Q Of the Club?

A Yes.

Q Not of muscular dystrophy?

A I couldn't tell you that, I could find that out.

Q So did anybody call up and did you book anybody for that day, did you book the muscular dystrophy association for that October 17 night?

A I couldn't tell you that, I just book the entertainment.

Q Do you have your records for that day?

A Do we have records for that day, oh, yes, we would have records, I should have brought them.

Q Did you look at those records?

A I looked at the records in as much as the date was in there for the muscular dystrophy dance in the date book.

ness credibility and evidentiary weight are for the common pleas court, not this court. *In Re Omicron Enterprises,* 68 Pa. Commonwealth Ct. 568, 449 A.2d 857 (1982) ; 47 P.S. §4-471. Therefore, we must agree with Judge ABOOD of the common pleas court, who heard the actual testimony, that there was insufficient evidence that no prior arrangements had been made, and that the board failed to carry its burden of proof in that regard.

Accordingly, we affirm.

ORDER.

Now, April 12, 1984, the order of the Common Pleas Court of Cambria County, entered February 3, 1983, at No. Misc. 21-1982, is affirmed.