543 A.2d 613

Columbia Yacht Club, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellee.

Submitted on briefs April 12, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Michael J. McAllister,* for appellant.

*Faith S. Diehl,* Assistant Counsel, with her, *Kenneth B. Skelly,* Chief Counsel, for appellee.

OPINION BY JUDGE PALLADINO, June 27, 1988:

Columbia Yacht Club (Appellant) appeals from an order of the Court of Common Pleas of Philadelphia County affirming an order of the Pennsylvania Liquor

Control Board (LCB) which suspended Appellant's liquor license for five days. We affirm.

Gary Skardisco, LCB enforcement officer, conducted an investigation of Appellant from March 28, 1985 until May 23, 1985. As a result of this investigation, Appellant was charged with selling alcoholic beverages to non-members on April 12 and May 18, 1985 in violation of section 406(a) of the Liquor Code.[1] After a hearing on the alleged violation, the LCB issued an adjudication in which it found: "The licensed organization, by its servants, agents or employes sold liquor and/or malt or brewed beverages on the licensed premises to non-members, on April 12 and May 18, 1985." Because this was at least Appellant's third citation within a period of four years,[2] the LCB imposed a five day suspension of Appellant's liquor license.

Appellant appealed to the trial court which held a de novo hearing. At the hearing, Officer Skardisco testified for the LCB. Appellant presented no evidence. Officer Skardisco testified as to the following events on April 12, 1985:[3] Officer Skardisco entered Appellant's premises, went to the bar and sat down. At that point, he was questioned by the club steward, Brian Tierney, as to his membership status. When Officer Skardisco informed Tierney that he was not a member, Tierney asked "Bob", who was seated next to Officer Skardisco, if he would sponsor Officer Skardisco. Bob agreed and Officer Skardisco signed the guest book. Tierney in-

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §4-406(a).

[2] Section 471 of the Liquor Code, 47 P.S. §4-471, mandates suspension or revocation for a third violation of the Liquor Code within a four year period. The record shows Appellant has been penalized at least three times in the years 1982 through 1985. Record exhibits C-2, C-3, C-4, C-5.

[3] N.T. at 4-6.

structed Officer Skardisco to place his money for drinks in front of Bob, which Officer Skardisco did. Officer Skardisco ordered two beers while he was on the premises, and the bartender took money from that in front of Bob each time.

Officer Skardisco testified as to the following events on May 18, 1985:[4] Officer Skardisco entered the premises and was immediately asked for his membership card by a doorman. Officer Skardisco told the doorman he was not a member and inquired how he could then become a member. The doorman gave him a membership application which Officer Skardisco filled out and returned to the doorman with the five dollar membership fee. Officer Skardisco was allowed to enter the bar and five minutes later ordered and was sold a beer. Officer Skardisco bought two more beers while on the premises. On all three occasions, he was sold the beer without being questioned as to membership.

The trial court found that Appellant had violated section 406(a) of the Liquor Code by selling alcoholic beverages to a non-member on April 12 and May 18, 1985 and affirmed the five day suspension. On appeal to this court,[5] Appellant contends that Officer Skardisco's testimony was insufficient, as a matter of law, to establish that alcoholic beverages were sold to a non-member on April 12 and May 18, 1985, and therefore, the trial court erred in finding that Appellant violated section 406(a) of the Liquor Code. Appellant does not dispute Officer Skardisco's description of the events which took place on these two evenings.

---

[4] N.T. at 6-7.

[5] Our scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law and whether the LCB's order is supported by substantial evidence. *Acorn Club of Swissvale v. Pennsylvania Liquor Control Board*, 93 Pa. Commonwealth Ct. 335, 500 A.2d 1296 (1985).

Section 406(a)(1) of the Liquor Code states, in pertinent part: "No club licensee nor its officers, servants, agents or employes, other than one holding a catering license, shall sell any liquor or malt or brewed beverages to any person except a member of the club." Sales to guests of members are in violation of this section, *Appeal of 35th Ward Democratic Club, Inc.*, 213 Pa. Superior Ct. 13, 245 A.2d 713 (1968), as are sales to individuals who have applied for membership. *Pennsylvania Liquor Control Board v. Westmoreland Republican Club*, 65 Pa. Commonwealth Ct. 506, 442 A.2d 1217 (1982).

Appellant contends that the events of April 12, 1985, related by Officer Skardisco, do not establish that Officer Skardisco "personally payed [sic] for the beers." Appellant's brief at 5. Appellant argues that to establish a sale by Appellant to Officer Skardisco, the LCB must prove (1) how much money Officer Skardisco placed in front of Bob, (2) how much money he retrieved from the pile when he left, (3) that the money the bartender took was Officer Skardisco's, and (4) that the bartender knew that the money in the pile in front of Bob belonged to someone else. We disagree.

As Appellant states in its brief: "It is clear that Skardisco was *told by the club steward* to place his money with Bob's money in front of Bob. It is also clear that the officer did so." (Emphasis added.) Appellant's brief at 6. Officer Skardisco testified that he ordered two beers, that the bartender took the money for the beer from the money pile in front of Bob, and that he retrieved his *change* from the pile when he left.[6] The

---

[6] Each beer cost $1.50. Officer Skardisco testified that he collected his change from in front of Bob when he left, but that he did not now recall how much he had originally put down or retrieved. N.T. at 20-21. Officer Skardisco specifically testified: "I kept track of how much I had and I collected my change when I left that evening." *Id.* at 21.

exact amount put down and retrieved is not relevant. Neither is the bartender's knowledge of whose money was in the pile. The club steward, by instructing Officer Skardisco to put his money in front of Bob, authorized the sale of alcoholic beverages to a non-member. *Cf. Appeal of Road Drivers' Association of Pennsylvania*, 30 Pa. Commonwealth Ct. 323, 373 A.2d 1161 (1977).[7] The trial court did not err in finding that Appellant sold alcoholic beverages to a non-member on April 12, 1985.

With respect to the May 18, 1985 incident, Appellant contends there is insufficient evidence to support the finding that Officer Skardisco was not a member of the club when he purchased the beer on May 18, 1985. Section 102 of the Liquor Code, 47 P.S. §1-102, requires that members be admitted "by written application, investigation and ballot." Appellant initially argues that the LCB, to prove that Officer Skardisco was not a member, had to show that Appellant did not investigate and hold a ballot on Officer Skardisco's written membership application in the period of time between when Officer Skardisco gave his application to the doorman and when he bought a beer. Appellant analogizes to *Pennsylvania Liquor Control Board v. American Legion Home Association of Cressan*, 81 Pa. Commonwealth Ct. 503, 474 A.2d 68 (1984) to support of his argument. Appellant's reliance on this case is misplaced.

*American Legion* dealt with the propriety of the LCB's suspension of a *catering* club license for selling alcoholic beverages to non-members. The sale occurred

---

[7] In *Road Drivers' Association*, a member, tending bar to help the bartender, sold two drinks to a non-member. This court concluded: "The only inference which could fairly be drawn . . . is that [the member] was acting for the appellant and as its agent." Here the only inference which can be fairly drawn from the club steward's conduct is that he authorized, as an agent of appellant, the sale of alcoholic beverages to a non-member.

after the LCB's enforcement officer, a non-member, paid admission to a Muscular Dystrophy benefit dance being held at the club. Catering clubs are permitted to sell alcoholic beverages to groups of non-members using their facilities if prior arrangements have been made and a record of this kept. *See* 40 Pa. Code §5.83. After a de novo hearing, the trial court held that the LCB had failed to meet its burden of proving that the catering club was improperly selling alcoholic beverages to non-members and reversed the suspension.

The only evidence in *American Legion* on the issue of who sponsored the dance was testimony given by a club witness who was responsible for booking *entertainment* rather than booking affairs. This court concluded that this fact diminished the credibility and weight of the witness' testimony that the club and not Muscular Dystrophy sponsored the event. Noting that questions of witness credibility and evidentiary weight are for the trial court, this court affirmed the trial court's decision to reverse.

Appellant focuses on this court's observation in *American Legion* that the LCB did not enter into evidence the club's catering records, which must contain information concerning the use of a catering club's premises by non-members. Appellant argues that the LCB should have produced Appellant's membership records as evidence that Officer Skardisco was not a member on May 18, 1985. However, this court did not hold in *American Legion* that the LCB had to produce the club's records to meet its burden of proof. The court only mentioned the records to show how easy it would have been for the LCB to establish that Muscular Dystrophy was not sponsoring the dance.

In the case at bar, Officer Skardisco testified that five minutes elapsed between the time he gave the

doorman the completed application and the time he bought the beer. The trial court found that amount of time insufficient to investigate the application and, additionally, found that a ballot could not have been taken. These are reasonable inferences for the factfinder to make from the uncontradicted and unobjected to testimony of Officer Skardisco.

Appellant's second argument in support of his assertion that insufficient evidence was presented to establish that Officer Skardisco was not a member of the club is based on the decision in *Bensalem Citizens Club v. Pennsylvania Liquor Control Board*, 37 Pa. D. & C. 3rd 312 (1985). The trial court in *Bensalem* held that because club bylaws permitted an applicant to participate as a club member for 30 days while the application was being investigated and voted on, the LCB officer who had completed a written application was a member. That is not the law. An applicant does not become a club member to whom a club licensee may sell alcoholic beverages without violating the Liquor Code until the applicant has been investigated and a ballot taken. *See Westmoreland Republican Club*. We conclude that it was not an error of law for the trial court to find that Appellant had sold alcoholic beverages to a non-member on May 18, 1985.

The order of the trial court is affirmed.

### ORDER

AND NOW, June 27, 1988, the order of the Court of Common Pleas of Philadelphia County in the above-captioned case is affirmed.