**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant,**

v.

**AMERICAN SERBIAN CLUB OF PITTSBURGH.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 25, 2000.

Decided April 20, 2000.

Richard C. Parker, Pittsburgh, for appellant.

Louis E. Caputo, Pittsburgh, for appellee.

Before SMITH, J., LEADBETTER, J., and NARICK, Senior Judge.

SMITH, Judge.

The Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) appeals from an order of the Allegheny County Court of Common Pleas reversing a decision of the Pennsylvania Liquor Control Board (Board). The Board found the American Serbian Club of Pittsburgh (Licensee) in violation of Sections 401(b) and

406(a)(1) of the Liquor Code (Code)[1] and Section 5.83(a) of the Board's regulations (Regulations),[2] for using its servants, agents or employees to sell alcoholic beverages to nonmembers without prior arrangement. The sole issue as stated by the Bureau is whether these sections are violated when a catering licensee sells alcoholic beverages at a function sponsored by a nonmember group to individuals unaffiliated with that group. The trial court and the Administrative Law Judge (ALJ) stated that the pivotal issue was whether the sale of admission tickets at the door of a catered, private nonmember event violated Section 5.83(a) of the Regulations.

## I.

Licensee holds a catering license issued by the Board. On July 11, 1997, at approximately 11:30 p.m., Bureau enforcement officer Brigitte Coll arrived at Licensee's premises in an undercover capacity. At the time, Licensee's premises were being used as the site of a "dinner dance" organized by the Serbian National Federation (SNF), a group unaffiliated with Licensee. Officer Coll entered the premises through an unlocked door and proceeded to a foyer area where she purchased a $5 admission ticket. Officer Coll then entered the barroom area of Licensee's premises and observed four bartenders serving alcoholic beverages to approximately 80 to 100 patrons. Officer Coll purchased "refreshment tickets" stamped with Licensee's name and exchanged these tickets for two alcoholic beverages. Officer Coll remained at the event for approximately 45 minutes, and at no time was she asked if she was a member of any group, including SNF.

On August 6, 1997, Bureau enforcement officer Joseph Smiller entered Licensee's premises, identified himself to Licensee's president Dane Topich and requested to examine Licensee's minute book and catering records. Licensee's catering records contained an application, submitted by SNF and dated June 14, 1997, that requested the use of Licensee's facilities for a dance commencing at 8:00 p.m. on July 11, 1997 and ending at 2:00 a.m. on July 12, 1997, for approximately 500 people. The records noted that the application was accepted by Licensee on July 8, 1997 and stated that Licensee would furnish alcoholic beverages to be sold by SNF at the event. Mr. Topich told Officer Smiller that payment for the use of Licensee's facilities came from food and alcoholic beverages provided by Licensee during the event.

On October 24, 1997, the Bureau cited Licensee for using its servants, agents or employees to sell alcoholic beverages to nonmembers without prior arrangement in violation of Sections 401(b) and 406(a)(1) of the Code and Section 5.83(a) of the Regulations. Licensee appealed and a hearing was held before the ALJ. After taking testimony from Officers Coll and Smiller and from Mr. Topich, the ALJ concluded that Licensee violated Section 5.83(a) by failing to make arrangements at least 24 hours in advance of the event and fined Licensee $200. The ALJ also concluded

1. Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 4–401(b) and 4–406(a)(1). Section 401(b) provides: "The board may issue to any club which caters to groups of non-members, either privately or for functions, a catering license, and the board shall ... define what constitutes catering under this subsection...." Section 406(a)(1) provides: "No club licensee nor its officers, servants, agents or employes, other than one holding a catering license, shall sell any liquor or malt or brewed beverages to any person except a member of the club."

2. 40 Pa.Code § 5.83(a). Section 5.83(a) provides: "Catering ... means the furnishing of liquor or malt or brewed beverages, or both, to be served with food prepared on the premises or brought onto the premises already prepared, for the accommodation of groups of nonmembers who are using the facilities of the club by prior arrangement, made at least 24 hours in advance of the time for private meetings or functions, such as dances, card parties, banquets and the like; and which is paid for by the nonmembers."

that Licensee unlawfully permitted SNF, a private nonmember group, to sell admission tickets at the door and to open the event to the public. Licensee appealed to the Board, which affirmed the ALJ. The Board noted that a catering club licensee may sell food but not alcoholic beverages to the general public and concluded that the sale of tickets to individuals unaffiliated with the sponsoring group violated the 24–hour pre-arrangement requirement.

■ Licensee appealed to the Court of Common Pleas, which reversed the Board. The court determined that no legal basis existed for the conclusion that the 24–hour pre-arrangement requirement precluded ticket sales for admission to a private event and that the Bureau cited no specific statutory language to support its interpretation of Section 5.83(a). Moreover, the court stated that if the Legislature intends to preclude ticket sales at such events, it should enact the appropriate legislation. This Court's review of the trial court's order is limited to determining whether there was substantial evidence to support the findings of fact and whether the trial court abused its discretion or committed an error of law. *G.C.P. Enterprises, Inc. v. Pennsylvania State Police, Bureau of Liquor Control Enforcement,* 740 A.2d 1205 (Pa.Cmwlth.1999).

### II.

The Bureau contends that the sale of admission tickets at the door is not what caused the violation and therefore is not the issue. Rather, the Bureau argues that Sections 401(b) and 406(a)(1) of the Code and Section 5.83(a) of the Regulations prohibit a catering licensee from selling alcoholic beverages at a nonmember group's function to individuals unaffiliated with the nonmember group. The Bureau maintains that because the SNF event was billed as a private social dance for members and their guests only, Licensee violated Section 5.83(a) by allowing anyone from the public to enter the event and to purchase alcohol-

ic beverages without first being questioned as to group affiliation.

Citing *Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 485 A.2d 732 (1984), the Bureau stresses the Supreme Court's explanation of the purpose for club licensure, which is to promote the "mutual benefit, entertainment, fellowship or lawful convenience" of club members and to permit a club licensee, which must be a nonprofit corporation or association, to sell alcoholic beverages under certain circumstances and to allow a cash bar during a private, pre-arranged catered function for a nonmember group. The Bureau argues that the Code protects the public health and safety by regulating the sale of liquor and that were it to permit club licensees to indiscriminately admit unknown persons at the door of licensed premises during catered events, the Bureau would sanction what amounts to the operation of a retail establishment open to the public when club premises are used for private functions.

■ The object of statutory interpretation is to ascertain and to effectuate the intent of the General Assembly. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). A statute's words and phrases must be construed according to the rules of grammar and according to their common and approved usage. Section 1903(a) of the Statutory Construction Act, 1 Pa.C.S. § 1903(a). Section 401(b) of the Code states that the Board may issue a catering license to "any club which caters to groups of non-members, either privately *or for functions* . . . ." (Emphasis added.) Section 5.83(a) of the Regulations provides that a catering licensee may furnish alcoholic· beverages "for the accommodation of groups of non-members who are using the facilities of the club by prior arrangement . . . for private meetings *or functions, such as dances, card parties, banquets and the like* . . . ." (Emphasis added.) A plain reading of both sections reveals that neither requires

nonmember "functions" to be exclusive in nature.

 The Court notes that the Bureau's interpretation of Section 5.83(a) to require Licensee to first ascertain an entrant's affiliation to the sponsoring nonmember group before allowing admission to a catered event would create a conflict with Section 401(b). Courts must give great deference to an agency's administrative interpretation of its own regulations when that interpretation is logical and not plainly erroneous. *See, e.g., Pelton v. Department of Public Welfare,* 514 Pa. 323, 523 A.2d 1104 (1987). However, the Court is not bound by an agency's interpretation when it conflicts with the governing statute. *Id.* The interpretation urged by the Bureau in this case would lead to the somewhat absurd result of precluding fundraisers, weddings or any other event sponsored by a nonmember group that might include guests unaffiliated with that group. *See, e.g., Pennsylvania Liquor Control Board v. American Legion Home Ass'n of Cresson,* 81 Pa.Cmwlth. 503, 474 A.2d 68 (1984) (catering licensee provided facilities for charity fundraiser at which admission tickets were sold).

Licensee argues that nothing in the Code or in the Board's Regulation prohibits ticket sales at the door to nonmembers attending a catered event without Licensee's first determining their affiliation with the group sponsoring the event. The Court agrees. It was permissible for SNF to sell tickets to its "dinner dance" to individuals unaffiliated with its group, so long as the event was paid for by SNF and arrangements were made at least 24 hours in advance. The record reveals that Licensee complied with the requirement that prior arrangements be made for the catered event, and this fact is undisputed by the Bureau. Furthermore, the circumstances do not support the Bureau's contention that Licensee's activities amounted

to the operation of a retail establishment open to the public in contravention of the Code. The Court thus holds that the trial court properly identified the issue and reached the correct conclusion that nothing in the Code or in the Board's Regulation specifically prohibited Licensee's actions in this case.[3] The order of the trial court is affirmed.

### ORDER

AND NOW, this 20th day of April, 2000, the order of the Allegheny County Court of Common Pleas is hereby affirmed.

---

3. Licensee points out the confusion between the trial court's decision and the Bureau's arguments to this Court that was created, according to Licensee, by a change in the Bureau's position.