NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3051
_____

ROBERT V. PETRO, individually and on behalf of all others similarly situated,
Appellant

v.

LUNDQUIST CONSULTING INC.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:21-cv-01187)
District Judge:  Honorable J. Nicholas Ranjan
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 14, 2023

Before: RESTREPO, SCIRICA, and SMITH, *Circuit Judges*

(Filed:  February 7, 2024)
_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*.

Pennsylvania has a long history of protecting consumers from small-dollar lenders

charging usurious interest rates on borrowed money. *See Lutz v. Portfolio Recovery*

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

*Assocs., LLC*, 49 F.4th 323, 329 (3d Cir. 2022). The Consumer Discount Company Act ("CDCA") was enacted to extend credit more readily to consumers by protecting borrowers "against extortionate interest charges" for "loans of comparatively small amounts." *Cash Am. Net of Nev., LLC v. Dep't of Banking*, 978 A.2d 1028, 1036 (Pa. Commw. Ct. 2009) (quoting *Equitable Credit & Discount Co. v. Geier*, 21 A.2d 53, 57, 58 (Pa. 1941)). Specifically, the CDCA imposes restrictions on unlicensed small-dollar lenders "in the business of negotiating or making loans or advances of money on credit," who may not "charge, collect, contract for[,] or receive interest" at an annual interest rate above 6%. *Lutz*, 49 F.4th at 329 (quoting 7 P.S. § 6203.A) (alteration in original). But when a consumer defaults on a CDCA-regulated loan and the account is subsequently charged off, the CDCA's regulatory framework no longer applies. *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 143 (3d Cir. 2022).

Appellant Robert Petro sued Lundquist Consulting, Inc. ("LCI") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA") after LCI filed a proof of claim in Petro's bankruptcy proceeding to collect on the balance of his charged-off loan account. Petro claims this filing was unlawful because the debt LCI sought to collect originated with a CDCA-licensed lender who sold it to an unlicensed third party, allegedly in violation of the CDCA. Relying on our decisions in *Lutz* and *Zirpoli*, the District Court found that the CDCA's anti-usury regulatory framework was not implicated in this situation and granted LCI's motion for judgment on the pleadings. *Petro v. Lundquist Consulting, Inc.*, No. 2:21-cv-1187-NR, 2022 WL 4610577, at *4 (W.D. Pa. Sep. 30, 2022). For the reasons that follow, we will affirm.

## I.

On February 3, 2016, Petro obtained a loan from Lendmark Financial Services ("Lendmark"), a small-dollar lender licensed under the CDCA. The total amount of the loan was $3,001.76, which included principal and CDCA-authorized finance charges. The terms provided for 24 monthly payments, with a maturity date of February 11, 2018. At some point during the loan term, Petro stopped making payments, and Lendmark charged off the remaining account balance of $497 on June 26, 2018.

Lendmark then sold the charged-off debt to Plaza Services, LLC ("Plaza"), who sold it to Tea Olive, LLC ("Tea Olive"). Neither Plaza nor Tea Olive is a bank or depository institution, neither negotiates or makes loans or advances of money or credit, and neither holds a CDCA license. Nor did the Pennsylvania Department of Banking and Securities (the "Department"), the state agency charged with enforcement of the CDCA, approve the sales. Tea Olive then hired LCI for the purpose of collecting the balance owed on the account. The debt LCI attempted to collect was comprised of charges originally included within the Lendmark contract, and no additional charges (such as interest or late fees) were applied.

## II.[1]

We review the District Court's order granting judgment on the pleadings to LCI under Fed. R. Civ. P. 12(c) de novo. *Hanover Ins. Co. v. Urban Outfitters, Inc.*, 806 F.3d 761, 764 (3d Cir. 2015). This standard of review is plenary and similar to the standard of

---

[1] The District Court had federal question jurisdiction over Petro's claims pursuant to 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

review for a motion for summary judgment. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219–20 (3d Cir. 2005). We view the facts presented in the pleadings and the inferences drawn from them in the light most favorable to the nonmoving party. *Id.* at 220.

In this Circuit, FDCPA claims have four elements: (1) the plaintiff must be a "consumer," 15 U.S.C. § 1692a(3); (2) the defendant must be a "debt collector," *id.* § 1692a(6); (3) the challenged practice must relate to the collection of a "debt," *id.* § 1692a(5); and (4) the defendant must have violated the FDCPA in attempting to collect the debt. *See Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Petro claims that LCI violated the FDCPA by filing a proof of claim in his bankruptcy proceeding, which allegedly constituted a false, deceptive, or misleading representation in connection with the collection of a debt, *see* 15 U.S.C. § 1692e, and/or unfair or unconscionable means to collect or attempt to collect a debt, *see id.* § 1692f.

These allegations are premised upon Petro's claim that LCI could not lawfully collect interest and fees which were authorized under the CDCA because neither Tea Olive nor LCI is a CDCA licensee, and neither Plaza nor Tea Olive obtained approval from the Department prior to purchasing Petro's charged-off account. Thus, Petro's FDCPA claims only survive if he can prove that LCI implicated and violated the CDCA by attempting to collect debt which originated with a CDCA-licensed lender and was subsequently sold to unlicensed debt buyers.

## III.

When interpreting a statute, we begin with the "language of the statute itself."

4

*Barnes v. Cohen*, 749 F.2d 1009, 1013 (3d Cir. 1984). We must read the CDCA as a whole, with the intent of the legislature in mind.[2] When the words of a statute are not explicit, a court may ascertain the intent of the legislature by looking at, among other things, administrative interpretations of the statute.[3] 1 Pa.C.S. § 1921(c)(8). *See Crown Castle NG East LLC v. Pa. PUC*, 234 A.3d 665, 674 (Pa. 2020).

Under the CDCA, entities in the "business of negotiating or making loans or advances of money on credit" are required to obtain a license. 7 P.S. § 6203.A. This license permits such entities to lend money and collect charges (interest, discount, bonus, fees, and fines) that aggregate in excess of those which the "lender would otherwise be permitted by law to charge if not licensed under th[e] act." *Id.* We have determined that the word "negotiate" as it is used in the statute means "to bargain." *Lutz*, 49 F.4th at 333.

CDCA Section 6214.I dictates that a licensee may not sell CDCA-authorized contracts to an unlicensed person or entity. 7 P.S. § 6214.I. The CDCA defines a

---

[2] "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. §1921(a).

[3] Federal courts afford state administrative agencies the deference they would receive under state law. *Twp. of Bordentown v. FERC*, 903 F.3d 234, 270 (3d Cir. 2018). Pennsylvania specifically recognizes Auer-style deference for its agencies. *Del. Riverkeeper Network v. Sec'y of the Pa. Dep't of Envtl. Prot.*, 870 F.3d 171, 181 (3d Cir. 2017). Meaning, in reviewing an agency's interpretation of a statute and its own regulations, unless the language is clear, Pennsylvania courts defer to the agency's interpretation of the statute and its own regulations. *Buffalo Twp. v. Jones*, 778 A.2d 1269, 1276 n.8 (Pa. Commw. Ct. 2001). An administrative agency's interpretation should be overturned or disregarded only for cogent reasons or where it is "clearly erroneous." *See Tool Sales & Serv. Co. v. Bd. of Fin. & Revenue*, 637 A.2d 607, 613 (Pa. 1993).

"licensee" as "a corporation holding a license issued under the provisions of th[e] act, which license has not been cancelled, surrendered, or revoked and has not expired." 7 P.S. § 6202. "Contract" means "a promissory or judgment note . . . contract, . . . or any other form of negotiable or nonnegotiable instrument evidencing an agreement to pay a sum certain in money at a fixed or determinable time[.]" *Id.* Given that the CDCA relates to consumer credit[4] and the intent of the statute is to protect consumers from small-dollar lenders "in the business of negotiating loans," it is reasonable to infer that the term "contract" refers to loan contracts.

A default occurs when a borrower fails to pay a contract at the agreed upon "fixed or determinable time." *Id.* CDCA Sections 6213.K, 6213.P, 6214.B, and 6215 address the kinds of charges and fees that a licensee may collect in the event of default. But these provisions place no limitations on the right of the licensee to charge off[5] a defaulted loan balance and close an account where there is no longer any reasonable expectation of payment. Unlike a default, which the borrower can cure, a charge-off is a post-default decision made by the lender once the debt has been deemed uncollectible. *See Zirpoli*, 48

---

[4] The preamble to the Act of April 8, 1937, P.L. 262, No. 66, which enacted the CDCA, states that the Act "[r]elat[es] to consumer credit." Title 1 Pa.C.S. § 1924 provides that the preamble of a statute may be considered in the construction thereof. "Although a determination as to legislative intent may not be based solely upon the title and preamble of a statute, courts may consult the title and preamble as part of the statutory construction process." *MacElree v. Chester Cnty.*, 667 A.2d 1188, 1194 (Pa. Commw. Ct. 1995) (citations omitted).

[5] "Charge-off" means "[t]o treat (an account receivable) as a loss or expense because payment is unlikely." Black's Law Dictionary (11th ed. 2019).

F.4th at 143 ("[A] charged-off loan [is] no longer performing as a loan."). Thus, a licensee that sells a charged-off obligation is not selling a defaulted loan contract; it is selling unsecured debt.[6]

The CDCA is intended to regulate consumer credit, not to regulate the collection of consumer debt. Tellingly, the word "debt" does not appear anywhere in the text of the CDCA, nor does the phrase "charge off." *See Dechert LLP v. Pa. Dep't of Cmty. & Econ. Dev.*, 234 A.3d 911, 918 (Pa. Commw. Ct. 2020) ("Indeed, we not only review what the statute says; we 'must also listen attentively to what it does not say.'") (quoting *Commonwealth v. Giulian*, 141 A.3d 1262, 1268 (Pa. 2016)). Accordingly, entities in the business of purchasing and collecting charged-off consumer debt are not subject to the CDCA's regulatory scheme. *See Lutz*, 49 F.4th at 334 ("[I]t is not reasonable to infer that an entity that purchases charged-off debt would also be in the business of negotiating or bargaining for the initial terms of loans or advances.").

Petro argues that this conclusion would render CDCA Sections 6208 and 6214.I superfluous. But concluding that the CDCA does not apply to the sale of charged-off debt has no impact on the restriction in Section 6208 prohibiting the transfer or assignment of a license, or the restriction in Section 6214.I prohibiting the sale of a contract to an entity not holding a license without the Department's approval. Such prohibitions are not implicated in the sale or collection of post-default, charged-off debt.

The Department offered support for this conclusion in its response to an invitation

---

[6] Debt is a "[l]iability on a claim; a specific sum of money due by agreement or otherwise." Black's Law Dictionary (11th ed. 2019).

for an *amicus curiae* letter on the issues raised in this appeal.[7] *See* Dep't of Banking and Securities Amicus Ltr. (Nov. 13. 2023) (ECF No. 39).[8] We asked the Department:

> Whether the CDCA applies to an entity not holding a license under the Act where (a) it purchases or attempts to collect on charged-off consumer loan accounts of debtors in bankruptcy that consist in whole or in part of unpaid "interest or discount" and "service charge[s]" included in a contract with a CDCA licensee, 7. P.S. § 6202; and (b) "the prior written approval of the Secretary of Banking" was never obtained to purchase said accounts from a CDCA licensee. 7. P.S. § 6214.I.

*Id.* at 1. The Department stated unequivocally that "[t]he CDCA does not apply in this situation." *Id.*

The Department's interpretation aligns with our conclusion that the CDCA is a loan statute, not a debt collection statute, when read in its entirety. *Id.* at 2–3. Additionally, the Department distinguished the collection of charged-off debt, being a single numerical figure (such as the debt LCI sought to collect), from the receipt of ongoing CDCA-authorized charges (i.e. monthly loan payments) by an unlicensed entity. *Id.* at 3.

In *Lutz*, we determined that the CDCA only applies to entities in the business of negotiating or bargaining for the initial terms of loans or advances. *Lutz*, 49 F.4th at 334.

---

[7] Section 202.D of the Department of Banking Code authorizes the Department to issue statements of policy and interpretive letters regarding the CDCA, which do not have the force of law. 71 P.S. § 733-202.D ("The department may issue orders, statements of policy and interpretive letters necessary and appropriate to administer this act or any other statute within the department's jurisdiction to administer or enforce.").

[8] The Court extends its gratitude to the Pennsylvania Department of Banking and Securities for responding to the Court's invitation for an *amicus* submission.

Petro argues that the District Court erred in relying on *Lutz* because the debt at issue in that case was credit card debt which originated with a national bank and therefore was never within the scope of the CDCA. That the CDCA governed the terms of Petro's loan does not impact the legality of LCI's conduct here. Like the appellee in *Lutz*, LCI did not issue the loan but instead only endeavored to collect charged-off debt, an activity which the CDCA does not regulate. Thus, the District Court was correct to find that Petro's claim "isn't singularly a Section 6214 claim; it depends also on [LCI] being subject to Section 6203 of the CDCA." *Petro*, 2022 WL 4610557 at *3.

Petro's final argument states that the District Court should not have relied upon dicta in *Zirpoli* because it is contrary to the plain text of the CDCA and the statute's purpose. We disagree. *Zirpoli* also dealt with a CDCA-authorized loan contract which was sold to an unlicensed third party, but its holding focused on the arbitrability of such contracts. Relying on an *amicus curiae* letter written by the Department for the *Lutz* panel, which stated that the purchase of charged-off credit card debt did not require a CDCA license, this Court concluded that such a transfer "falls outside of the CDCA's purview as it is a charged-off loan." *Zirpoli*, 48 F.4th at 143. This reasoning is appropriate and consistent with our interpretation of the CDCA herein, as well as the Department's interpretation of the statute.

## IV.

For the foregoing reasons, we will affirm the District Court's order.

9